## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("**Agreement**") is entered into between **Jamila Smith** for herself and her heirs, successors and assigns ("**Employee**"), and **Diversity Search Group, LLC** together with all its former and current officers, directors, shareholders, members, owners, employees, and agents in their individual and representative capacities, and affiliates, subsidiaries, successors and assigns, including specifically Bruce Sherald for himself and his heirs, successors and assigns (collectively "**DSG**" or "**Company**.")

### Background

Employee filed a Complaint in the Southern District of Ohio against DSG and Bruce Sherald alleging violations of various state and federal laws, captioned *Smith v. DSG et al.*, Case no. 2:16-cv-441 (hereinafter "the lawsuit"). The Parties agree that *bona fide* disputes exist between the Parties, including whether Employee was entitled overtime wages, and the amount of such wages, under the state and federal wage laws.

The Parties through their respective counsel have reached a binding agreement to settle Employee's claims, dismiss the lawsuit, and to resolve all matters related to Employee's employment with and termination from the Company. Therefore, in consideration of the mutual promises in this Agreement, the receipt and sufficiency of which are hereby acknowledged, Ms. Smith and the Company agree as follows:

### 1. SETTLEMENT PAYMENTS AND DISTRIBUTION

a. **Total Settlement Payment.** The total Settlement Payment is $30,000 including: (i) settlement payments to Employee pursuant to this Agreement; and (ii) Employee's Counsel's attorneys' fees and expenses.

b. **Payment to Employee:** $17,600 of the Total Settlement Payment will be paid to Employee per the distribution process described in Section 1(f).

c. **Treatment of Employee's Wage Settlement Payment.** $15,000 will be paid to Employee in settlement of wage claims and liquidated damages ("wage settlement payment.") Half of the wage settlement payment ($7,500) is overtime compensation subject to the withholding of all applicable federal, state and local taxes, in accordance with Employee's previously elected wage withholding instructions, and reported on an IRS Form W-2. Employer is responsible for paying the Employer's portion of the payroll taxes as required by law. The other half of Employee's wage settlement payment ($7,500) is liquidated damages, and reported on an IRS Form 1099-Misc.

d. **Treatment of Employee's Remaining Settlement Payment.** The remaining settlement payment in the amount of $2,600 is payment in settlement of all remaining claims, including without limitation, alleged violations of R.C. 4112, *et seq.* and common law.

e. **Employee's Attorneys' Fees and Costs:** $12,400 of the Total Settlement Payment will be paid to Employee's Counsel for attorneys' fees and expenses. Employee's Counsel will

Page 1 of 5

provide a Form W-9 with respect to the attorneys' fees and expenses, and Employer will issue to Employee's Counsel a Form 1099-Misc.

f. **Distribution Process:** The settlement payment will be distributed as initial payment, followed by four separate monthly payments as outlined below. The Company will deliver the settlement payments directly to Plaintiff's Counsel no later than the 4th of each month. Separate checks will be issued to each Plaintiff and Plaintiffs' Counsel. The settlement payment will be distributed as follows:

| Date | Amount to Coffman Legal, LLC. | W2 Wages to J. Smith | 1099 Liquidated Damages/Compensatory damages to J. Smith |
|---|---|---|---|
| 12-4-2016 (initial payment) | $6,400 | $7,500 | $0 |
| 1-4-2017 | $1,500 | 0 | $2,525 |
| 2-4-2017 | $1,500 | 0 | $2,525 |
| 3-4-2017 | $1,500 | 0 | $2,525 |
| 4-15-2017 | $1,500 | 0 | $2,525 |

g. **No Tax Liability.** The Company is not responsible for or liable to the Employee or any other person or entity for, and Employee agrees to indemnify the Company against, any adverse tax effect or tax liability associated with any payments, benefit, deductions, or withholdings made under this Agreement, except withholdings in accordance with the Company's ordinary payroll practices.

h. **Dismissal of Lawsuit.** Within three business days of the Court's Order pursuant to the *Joint Motion for Approval of the Parties' Settlement Agreement Resolving Claims under the Fair Labor Standards Act and for Retention of Jurisdiction* ("Joint Motion"), Employee will dismiss the lawsuit in its entirety with prejudice including without limitation, EEOC Charge No. 532-2016-01491 and not exercise any appeal rights

i. **Delay of Court Approval.** In the event that the Court does not approve the Joint Motion by December 3, 2016, the initial payment under Section 1(f) will due on the 4th day of the month immediately following the Court's Order. The four monthly payments will be due on the 4th day of each of the four (4) months subsequent to the month the initial payment is made.

2. **Acknowledgment of Full Payment:** Employee agrees that the Total Settlement Payment represents any and all back pay and wages (whether overtime or otherwise) damages (whether liquidated, compensatory, exemplary, punitive or otherwise), attorneys' fees, costs, interest, or other monies to which Employee may have been entitled to receive or recover in connection with Employee's Fair Labor Standards Act, the Ohio Minimum Fair Wage Standards Act, and all other claims through the date of this Agreement.

3. **Fair, Adequate and Reasonable Settlement:** The Parties agree that the settlement is fair, adequate and reasonable. Moreover, Employee's attorney, Matthew Coffman agrees that the

2

above payments constitute a fair and reasonable resolution of a *bona fide* dispute, as stated in the *accompanying Joint Motion for Approval of the Parties' Settlement Agreement*.

4. **WAIVER AND RELEASE**: Employee hereby releases, waives, and forever discharges any right or claim, whether known or unknown to her up to and including the date of the execution of this Agreement. This waiver and release includes, without limitation, any and all legal or equitable rights or remedies which she had or may now have against DSG under any federal, state, local statute or law, or common law, including, but not limited to, Ohio Revised Code Title XLI.; Title VII of the 1964 Civil Rights Act; the Age Discrimination in Employment Act; Older Workers' Benefits Protection Act; the Civil Rights Act of 1991; the Americans with Disabilities Act; the Fair Labor Standards Act; the Family and Medical Leave Act; Ohio's Workers' Compensation Law; local, state and federal whistleblower laws; the Employee Retirement Income Security Act of 1974; the National Labor Relations Act; the Consolidated Omnibus Budget & Reconciliation Act of 1986; the Sarbanes-Oxley Act, 29 U.S.C. §§ 806, 1021, 1131-1132; and any statutory or regulatory amendments to any aforementioned laws, as well as other claims including, without limitation, wrongful termination, defamation, fraud, discrimination, breach of contract, negligence, personal injury, etc.

   a. Ms. Smith promises that she, nor anyone acting on her behalf, has not and will not in the future, file any complaint, charge, grievance, lawsuit, or other action against the Company in connection with any aspect of her employment with DSG, including without limitation her separation from DSG, or any other matter, whether known or unknown to her up to and including the date of the execution of this Agreement. In the event that any lawsuit, action, claim or proceeding is pending or instituted on Employee's behalf, she agrees to immediately obtain dismissal with prejudice of any such action. If the proceeding is a class action, Employee agrees to "opt out" of the class and not participate.

   b. Excluded from this waiver and release are claims or rights which cannot be waived or released as a matter of law. Employee expressly waives any claim to monetary or other relief obtained in connection with any lawsuit, action, charge, claim or proceeding, whether brought by Employee or any other party, including a governmental agency, on her behalf.

5. **Confidentiality:** Employee agrees she will not disclose to the general public any information regarding the existence or terms of this Settlement ("**confidential settlement information**"), except that she may discuss the Settlement with her spouse, tax advisor, or attorneys; in private conversation; as required by law; or with governmental agencies charged with enforcing the FLSA if requested by such agencies provided that Employee informs such individuals/entities of the confidentiality obligations under this Agreement and takes reasonable steps to ensure that this information is not disclosed in any public forum.

**OTHER TERMS**

6. **No Assignment of Claims:** Employee represents and warrants that Employee is the sole and lawful owner of all rights, titles and interests in and to all released matters, claims and demands referred to herein. Employee further represents and warrants that there have been no assignments or other transfers of any interest in any such matters, claims or demands that

3

Employee may have against the Employer.

7. **Non-Admission of Liability:** Employee acknowledges and agrees that the Employer's participation in this Agreement is not to be construed as an admission of any wrongdoing or liability whatsoever by the Employer and that is solely in settlement of *bona fide* disputes between the Parties.

8. **Choice of Law:** The Parties agree that this Agreement will be interpreted, construed, and enforced in accordance with the laws of the State of Ohio and the 6th Circuit Court of Appeals without regard to its conflicts of law rules.

9. **Attorneys' Fees.** If either party to this Agreement, or any person, entity or organization acting on their behalf, breaches any of the promises made in the Agreement, and the non-breaching party successfully defends or pursues any charge, lawsuit, complaint, claim or grievance as a result thereof, the breaching party understands and agrees that she/it will be liable for all damages, attorneys' fees, and costs incurred by the non-breaching party in defending or pursuing the same.

10. **Acknowledgements:** Employee acknowledges that she has been represented by counsel for the negotiation and settlement of this matter, and that she understands the terms of this Agreement, and is knowingly and voluntarily entering into it.

11. **Construction:** The Parties expressly agree and acknowledge that this Agreement is not to be construed against any of the Parties on the basis of which party drafted the Agreement.

12. **Severability:** The Parties agree that the terms of this Agreement are intended to be severable. If any term, provision, clause or item of this Agreement is declared to be invalid or unenforceable by any court or administrative body of competent jurisdiction, the term, provision, clause or item should be reformed (if possible, or severed if not) to give maximum effect to the intentions of the Parties, and the remaining portions of the Agreement will be enforced to give effect to the Parties' intentions to the maximum extent possible.

13. **Entire Agreement:** The Parties agree that this Agreement is the entire Agreement between them and represent their full and complete understanding. No prior or contemporaneous oral agreements may be offered to alter the terms of this Agreement. This Agreement is to be binding upon the Parties hereto and the Parties' heirs, executors, successors and assigns. This Agreement may not be amended, modified or terminated, in whole or in part, except by a written instrument signed by both Parties.

14. **LEGAL CONSULTATION AND REVOCATION PERIOD.** *Employee has the opportunity to review and consider this Agreement for up to twenty-one (21) days from the date she first receives it. Employee may, however, accept the terms of this Agreement at any time prior to the end of 21 days. Further, Employee understands that she has the right to consult an attorney regarding her rights, obligations and liabilities under this Agreement before she signs it, and she acknowledges that she has, in fact, consulted with an attorney in these matters.*

4

Employee may revoke this Agreement within seven (7) days of signing it by delivering a written notice of revocation to Julie M. Young at the address provided below, either by hand delivery or by certified mail, return receipt requested. For the revocation to be effective, written notice must be received <u>no later than</u> 5:00p.m. on the seventh (7th) day after Employee signs this Agreement. If Employee revokes this Agreement, DSG will have no further obligations pursuant to this Agreement. Notice must be delivered to:

Julie M. Young  
Worley Law, LLC  
28 Westerview Dr.  
Westerville OH 43081

By signing below, the Employee and Company **acknowledge that they have read this Confidential Settlement Agreement and Release of Claims and declare that they have consulted with counsel and fully understand this Agreement and its legal significance and voluntarily sign it below to signify their agreement with its terms.**

**PLAINTIFF**

_[signature]_     11-21-2016  
Jamila Smith     Date

**COMPANY**

_[signature]_     Dec. 1, 2016  
Diversity Search Group, LLC     Date

_[signature]_  
Title

**BRUCE SHERALD**

_[signature]_     12/1/16  
Bruce Sherald, individual     Date